THE UNITED STATES TELEGRAPH COMPANY *vs.* THE WESTERN
UNION TELEGRAPH COMPANY.

The object of the act of the legislature, " to provide for the incorporation and
regulation of telegraph companies," as amended by chapter 559 of the laws
of 1855, section 1, requiring telegraph companies to receive despatches from
other telegraph lines, and to transmit the same, except in the case of com-
panies owning parallel lines, or doing business in competition with, the line
over which the dispatch is required to be sent, was to compel companies with
extensive lines to receive from other telegraph companies messages which
such other companies could transmit no further, and to continue them on to
the place of ultimate destination.

That statute, though penal to the offender, is generally beneficial, and should
therefore be equitably construed.

The plaintiff and defendant were incorporated associations, engaged in the
business of telegraphing messages over their respective lines. Each party
had a line of telegraph from Albany to Buffalo. From Albany to Syracuse
they were parallel and competing lines, and from the latter place to Buffalo
the line of the plaintiff was a parallel and competing line with the northerly
line of the defendant, between those places, running along the direct railroad
line from Syracuse to Rochester, and on to Buffalo. The defendant had a
line of telegraph running from Syracuse to Auburn, and thence on to Geneva
and Canandaigua, and connecting with its northerly line at Rochester. The
plaintiff had no line from Syracuse to or towards Auburn, or between
that place and Rochester. Its nearest line to Auburn was the one which ran
parallel to the defendant's northerly line; and its nearest approximation to
Auburn was at a point where it passed, about eight miles distant therefrom.
The defendant used the Auburn line of its telegraph to convey through mes-
sages from Albany to Buffalo. The parties each had offices at Albany and at
Syracuse, and the defendant had an office at Auburn, but the plaintiff had not.
Between Syracuse and Auburn, the companies had no parallel or competing
lines. Syracuse was the nearest point, on the line of the plaintiff, to Auburn,
from which a message could be dispatched to that place by telegraph.

*Held,* 1. That as the proof showed that the plaintiff had no telegraph line from
Syracuse towards Auburn; and that the only line of telegraph from Syra-
cuse to Auburn was the line of the defendant, the court below did not err in
finding that the plaintiff had no line parallel to, or competing with, the de-
fendant's line between Syracuse and Auburn.

2. That although the line of the plaintiff competed with that of the defendant
east of Syracuse, and west of Rochester, and also with the northerly line of
the defendant between these places, it was not necessarily in competition with
the line between Syracuse and Auburn.

3. That the defendant was bound to receive from the plaintiff, at Syracuse, a
dispatch sent over the plaintiff's line from Albany to Syracuse, addressed to

United States Telegraph Co. *v.* Western Union Telegraph Co.

an individual at Auburn, and to transmit the same on payment of the usual charge; and that for neglecting and refusing to do so, it was liable for the penalty of $100 mentioned in the statute; notwithstanding the exception in such statute, in regard to parallel and competing lines.

4. That an action for such penalty need not be brought by the sender of the dispatch, but could be maintained by the plaintiff.

An action to recover the penalty given by the statute for neglecting or refusing to transmit a dispatch by telegraph can be maintained by the party who desires to send the same, and whose desire is not complied with. And if it be a telegraph company that desires another telegraph company to receive and forward a message, the company so desiring the telegram to be sent is the proper person to sue for the penalty, in case of refusal.

And this notwithstanding the blank upon which the telegram is written contains a printed heading of the terms and conditions on which the company receives telegrams to be transmitted, to the effect that it will not " be held liable for any error or neglect by any other company, over whose lines this message may be sent, to reach its destination. *And this company is hereby made the agent of the signer of this message, to forward it over the lines of other companies, when necessary.*"

Such a clause will be deemed as intended to shield the company from pecuniary responsibility for the misconduct or neglect of other parties or companies, and to have relation only to its personal liability over to the writers of the messages which shall be received by it for transmission, and to that alone.

The word "person" or "persons," when used in a statute, includes corporations.

APPEAL from a judgment in favor of the plaintiff, rendered at the Onondaga circuit, in September, 1864, on a trial by the court, a jury having been waived.

The action was brought to recover a penalty of $100, pursuant to the provisions of section 11 of " An act to provide for the incorporation and regulation of telegraph companies," as amended by chapter 559 of the laws of 1855, section 1, which declares it to be " the duty of the owner or the association owning any telegraph line, doing business within this State, to receive dispatches *from and for other telegraph lines and associations*, and from and for any individual, and on payment of their usual charges, for individuals, for transmitting dispatches, as established by the rules and regulations of such telegraph lines, to transmit the same with impartiality and good faith, under the

penalty of $100 for every neglect or refusal so to do, to be recovered with costs of suit, *in the name and for the benefit of the person or persons sending, or desiring to send, such dispatch;* provided that nothing contained in this section shall be construed to require any telegraph company or association to receive and transmit dispatches *from, or for, any other company or association* owning a line of telegraph *parallel with, or doing business in competition with,* the line over which the dispatch *is required* to be sent." (*Stat. at Large, vol.* 3, *p.* 722.) On the trial it appeared, and the court found, that the plaintiff and defendant were incorporated associations, engaged in the business of telegraphing messages over their respective lines. That each party had a line of telegraph from Albany to Buffalo. That from Albany to Syracuse they were parallel, and competing lines; and that from Syracuse to Buffalo the line of the plaintiff was a parallel and competing line with the northerly line of the defendant, between those places, running along the direct railroad line from Syracuse to Rochester, and on to Buffalo. That the defendant had a line of telegraph running from Syracuse to Auburn, and thence on to Geneva, Canandaigua, and connecting with its northerly line at Rochester; and that the plaintiff had no line from Syracuse to or towards Auburn, or between that place and Rochester; and that its nearest line to Auburn was the one which ran parallel to the defendant's northerly line, and that its nearest approximation to Auburn was at a point where it passed about eight miles distant therefrom. And the court also found that the defendant used the Auburn line of its telegraph to convey through messages, from Albany to Buffalo, when its convenience required it. That the plaintiff and defendant each had offices at Albany and Syracuse, and that the defendant had an office at Auburn; but that the plaintiff had not; and that between Syracuse and Auburn the plaintiff and defendant had no parallel or competing lines, and that Syracuse was the

United States Telegraph Co. *v.* Western Union Telegraph Co.

nearest point, on the line of the plaintiff, to Auburn, from which a message could be dispatched to that place by telegraph. That on the 4th of March, 1864, a message from an individual was delivered to the agent of the plaintiff at its office in Albany, to be transmitted to one "Wm. Baker, Auburn," and was transmitted over the line of the plaintiff to Syracuse, and received there by the agent of the plaintiff. And on the same day the plaintiff delivered to the defendant, at its office in Syracuse, the said message and requested that it should be transmitted to its address at Auburn, and tendered to the defendant the payment of its usual charge for individuals for transmitting the same, and that the defendant neglected and refused to transmit it. The court found, as a conclusion of law, that the plaintiff was entitled to recover the penalty of $100, and ordered judgment accordingly.

The defendant excepted to the findings that the lines of the defendant between Syracuse and Rochester—the one by the way of Auburn, and the northerly one—were separate lines, and to the finding that the plaintiff and defendant had no parallel or competing lines between Syracuse and Auburn. The other findings of fact were undisputed. And the defendant excepted to the conclusion of law that the plaintiff was entitled to recover.

*Theron R. Strong,* for the appellant.

*Daniel Pratt,* for the respondent.

FOSTER, J. If the line of the plaintiff was a parallel and competing line with the one of the defendant over which the dispatch was required to be sent, the defendant violated no obligation, and the action cannot be maintained. The defendant insists that it had but one line of telegraph between Syracuse and Rochester, or between Albany and

Buffalo; and if this be so, then it must be conceded that the line of the plaintiff was parallel and competing with it.

Of the facts proved there is no dispute, and they are substantially stated in the findings; and the question upon them is, whether two lines of the same company, united at the two ends, and running, the one on nearly a straight line through numerous villages, a distance of seventy-eight miles, and the other running on a different and much more circuitous route, through numerous other villages, for the distance of 104 miles, are, within the meaning of the statute in question, one and the same line, even though the owner of them uses, when occasion requires it, the longer of the two to convey messages from and to points beyond its junctions with the other?

The ordinary use of the northerly or shorter line of the defendant is to transmit *through* messages to and from points beyond Syracuse and Rochester, and to transmit way messages to and from the several points between those places, where offices are established; while the ordinary use of the Auburn line is to transmit messages to and from points on its own line, and, when occasion requires it, assist the other line in the transmission of messages to and from points beyond its own *termini*. It seems to me that in the contemplation of the statute in question, it is a distinct line, and that the section in question was intended to apply to just such a case. Suppose the line in question had run from Syracuse to Auburn, and to Ithaca and Owego, and thence by the way of the Genesee Valley to Rochester; would any one claim it to be a part of the northerly line of the defendant from Syracuse to Rochester, even though the company used it occasionally for the transmission of messages from and to points beyond those cities? And yet the additional distance over which the message in that case would have to pass on such line would be of no moment whatever. The line being once established, the messages over it would meet with no percept-

ible delay in the transmission, and no additional expense to the defendant. Upon the principle assumed by the defendant, if, instead of the line in question extending on to Rochester, it had ended at Auburn, it would be a part of the northerly line.

And the fourth resolution of the defendant, that " The Western Union Telegraph Company will not forward messages taken by the United States Telegraph Company at any point where the Western Union Telegraph Company has an office, destined to any point to which the Western Union lines extend and the lines of the United States Telegrah Company do not," shows that they claim that every part of all their lines constitute only one line, and that a competition with any part of any of them is a competition with every other portion of them.

This claim is in clear conflict with the section in question, which was aimed at the mischief to be produced by such refusal. The object of the statute was to compel companies with extensive lines to receive from other telegraph companies messages which such other companies could transmit no further, and to continue them on to the place of ultimate destination.

This statute, though penal to the offender, is generally beneficial, and should, therefore, be equitably construed. (*Per Spencer, Ch. J., in delivering the opinion of the court in Sickles* v. *Sharp,* 13 *John.* 498. *Hammond* v. *Webb,* 10 *Mod.* 282. *Id.* 117. *Bacon's Abr., Stat. I,* 9. *Plowden,* 36, 59.)

But it is claimed that the court below erred in finding that the plaintiff had no parallel or competing line with the defendant's line between Syracuse and Auburn. The proof certainly is clear that the plaintiff had no telegraph line from Syracuse to Auburn in any direction, and no line from Syracuse towards Auburn ; and that the only line of telegraph from Syracuse to Auburn was the line of the defendant. And of course this claim of the defendant is made upon the alleged conclusion of law, that inas-

much as the line of the plaintiff competed with that of the defendant east of Syracuse and west of Rochester, and also with the northerly line of the defendant between those places, it necessarily was in competition with the line between Syracuse and Auburn.

The statute in question speaks of lines of the same company, and treats the *lines* of the same company extending in different directions as separate lines; as, for instance, by section 5 of the same act, page 720, " such association is authorized to construct *lines* of telegraph along and upon any of the public roads and highways, &c., of this State," &c.

It is a familiar rule that the several parts of a statute are to be considered in the construction of it. From the language of the two sections, I think it is apparent that the legislature intended that section 11 should apply to the case of a telegraph company having lines running in more than one direction, and to consider them as separate lines. But the phraseology of section 11 is too clear and precise to admit of any doubt as to the intention of the legislature. To absolve the defendant from the penalty, the refused message must have come from " a company or association owning a line of telegraph parallel with, or doing business in competition with the line *over which the dispatch is required to be sent.*" Where was the dispatch *required* to be sent? Certainly from Syracuse to Auburn, and nowhere else. And there was no parallel line and no competition there.

I am therefore of the opinion that the defendant was bound to receive and transmit the message to Auburn.

The next question is, could the *plaintiff* maintain this action, or should it have been prosecuted by the signer of the message?

The section under consideration when speaking of natural persons alone, calls them " individuals," and when speaking of corporations alone, styles them " companies" or " associations ;" and when alluding to the parties who

may maintain the suit, uses the words "*person or persons.*" I have no doubt that the word *person* or *persons,* when used in a statute, includes corporations. (*The People* v. *May,* 27 *Barb.* 238. *The State of Indiana* v. *Woram,* 6 *Hill,* 33, 38. *The People* v. *The Utica Ins. Co.,* 15 *John.* 381, 382, *and cases there cited.*) And the action can be maintained by the party who desires to send the dispatch, and whose desire is not complied with. And if it be a telegraph company that desires another telegraph company to receive and forward such message, that the company so desiring the telegram to be sent is the proper person to sue for the penalty, in cases of refusal. (*Thurn* v. *Alta Telegraph Company,* 15 *Cal. R.* 472. *American Law Reg. vol.* 4, *p.* 210.)

But the blank upon which the copy of the telegram sent to the defendant's office was written, contained a heading in print, of the terms and conditions on which the plaintiff received telegrams to be transmitted; one clause of which was as follows: "Nor shall this company be held liable for any error or neglect by any other company, over whose lines this message may be sent, to reach its destination; *and this company is hereby made the agent of the signer of this message to forward it over the lines of other companies when necessary.*" And the defendant claims that being such agent, the plaintiff cannot maintain the action, even if without such agency it had a right to do so.

It may be a question of some doubt, but I have come to the conclusion that notwithstanding the clause in question, the plaintiff is the proper party to sue for the penalty. The clause referred to was doubtless intended to shield the plaintiff from pecuniary responsibility for the misconduct or neglect of other parties, or companies, and had relation only to its personal liability over to the writers of the messages which should be received by it for transmission, and to that alone; with all which the defendant had nothing to do. Its duty was to forward the mes-

sage, and for the refusal to do so it was subject to the penalty, and notwithstanding the clause in question, I think the plaintiff was the proper party to bring the action. The *plaintiff* desired the defendant to forward the message, and tendered the price for so doing. It was the *desire of the plaintiff*, which was disregarded, and, in my opinion, the judgment was right, and should be affirmed.

MORGAN, J. concurred.

MULLIN, J., concurred; except that he held that the plaintiff was not the proper party to bring the action.

BACON, J., did not sit.

Judgment affirmed.

[ONONDAGA GENERAL TERM, June 27, 1865. *Mullin, Morgan* and *Foster,* Justices.]